am Larry Laycock, appearing on behalf of ICON Health & Fitness. The facts and the governing law in this case combine to demonstrate that reversal is appropriate for two independent reasons. First, the lower court's decision regarding equivalence is erroneous. It places mere knowledge as an equivalent under Chinese patent law and as an equivalent to actual physical structure. That is wrong. Second, there is no other basis upon which the decision below may be affirmed. Specifically with respect to the erroneous decision regarding equivalence under Chinese law. The district court's ruling rests on the theory that under Chinese law, mental knowledge is equivalent to physical structure and therefore an instruction manual is equivalent to structural relationships that it teaches someone to create. This is not correct under Chinese law. To determine Chinese law, we look to Chinese sources. According to Nautilus' own expert witness, there are three sources to which this court may appropriately look. One is statutory, another is the Supreme People's Court and its interpretations, and the third would be the Beijing High People's Court and the articles that issue as part of its guidelines. Now it is important to recognize that the statements in the statutes which we have placed the pertinent portion of the patent law in the record are completely silent with respect to what an equivalent might be or what it might not be. So much like the American judicial system as it relates to patent law, the issue of equivalence under Chinese law is a creature of the courts and not of statute. We can then look to the Supreme People's Court and its interpretations. Those interpretations, although recognizing establishment of infringement under the doctrine of equivalence, that is not in dispute, they do not make any statement or reference or interpretation in its provisions that would define what it is that constitutes equivalent, an equivalent or equivalent structure under the Chinese patent regime. Now we have to turn for the first time to find the answer to what an equivalent is to the Beijing High People's Court. In those particular articles, we find the answer. Now as I mentioned before, we can look to this source of law as an appropriate source of law for this court to base its opinion upon because it was even Nautilus' own expert that pointed out this is the appropriate place to go. Now she was right to do so. She was right to tell us to go to this source. It is the Beijing High People's Court that corresponds to this court. It occupies the same tier as a Federal Circuit Court of Appeals. So its pronouncements, its judgments, and the articles that issue or arise out of its statements and guidelines are powerful and persuasive. Turning to those particular items of law that we find in the articles of the Beijing High People's Court, the guidelines teach that in order to qualify as an equivalent, a feature must perform substantially the same function by substantially the same means to achieve substantially the same effect. Now that's important. In the provisions in Article 44, for example, the definition of what means are is found. It says that it is a common replacement. Now if we just think about this logically, a common replacement can be and is considered to be an equivalent. But you can't take an instruction manual and make that perform the function of actual physical structures in an exercise device. It's not just the manual, is it? It's the manual plus the parts. Let's say I went to China and brought home a bike with me, fully structured, fully put together, and I wanted a second bike or a replacement bike, and the company sent to me not a fully built bike, but the bike in the box with the instructions. You're saying Chinese patent law would not protect, would protect the first but not the latter. Yes. In terms of Chinese patent law, if the product is assembled, and in this case we have one independent claim in the Chinese patent at issue, that patent requires an exercise apparatus that actually functions, has all of the relationships established between the various parts. If that's assembled in China, then there is an act of infringement, which we have acknowledged. But all of the products at issue in this case are simply I can take my fully built bike that I bought in China, and then I can take the parts that I had shipped to me in the United States, and I can manufacture exactly the same bike and say, hey, I didn't rely on the stationary bike or elliptical. I relied on the box of parts with the instructions. That is the status of the law in China, Your Honor. There is no provision of Chinese law that would provide for infringement that would arise out of the export of a package of parts for assembly in a foreign jurisdiction. Now, this takes us, and it's very instructive to look at the case authorities that existed in the United States when a similar gap in the law existed here under American law. In the Chinese, this is deliberate, that they didn't modify their law the way we did? They didn't deliberately change to mirror our law? You think that's deliberate? There is no other explanation, Your Honor, because if we look at the articles themselves, you have complete correspondence between the American Patent Code. If you look to, for example, Article 11, you'll find that it is a similar provision to Section 271a. So they're just protecting their manufacturers? They're choosing to employ a law that was in existence here in the United States all the way up until 1984 when Section 271f of the Patent Code was enacted. Until 1984, that same state of non-infringement would exist. The Deep South case is instructive. You'll recall that in 1972, the United States Supreme Court, in this Deep South case, was dealing with a manufacturer of parts for a shrimp deveining system. They would send those parts, a package of parts, just like we have in this case, to a foreign jurisdiction for assembly. The United States Supreme Court, in the absence of Section 271f, found that there was absolutely no infringement. There couldn't be infringement because, as it was later recognized, this gap in the law made it so that those unassembled parts could be transferred. Now, when we look at the Chinese law, there is obvious, a conspicuous absence of any counterpart to Section 271. We have to conclude that they have not determined, as it was later determined in the United States, to enact legislation that would provide a statute for such findings of infringement. So as we have it now, the status of the law in China is that those unassembled parts can be sent to foreign jurisdictions for assembly, and that will not constitute any act of direct infringement, and certainly not an act of infringement, as was found by the lower court here, of equivalence. Another possibility is that they thought that the Supreme Court decision was incorrect or that the statute was clear and that our court misinterpreted and there was no need to change their regime. A careful examination of the Deep South decision and its progeny, Your Honor, would decry such a result. In fact, it was legislatively enacted not because there was an interpretation issue. There was a simple absence of any law that would provide. If you don't have the product assembled in the jurisdiction where the patent exists, then you don't have an infringement of the patent. If you send it into a foreign jurisdiction, it's assembled there, the act of legislation here in the United States in 1984 was intended to fill that gap. That gap still exists in Chinese law. They've intentionally — this is not a matter of interpretation. But that brings us back to the issue of what is an equivalent. This leads to ludicrous results if we examine the lower court's decision that anything can suffice as an equivalent as long as it conveys knowledge. That means that you, when you go to the gym, you would be told, well, we don't have the actual patented device, but we have an equivalent. And you would see everyone else sitting on an exercise device, and they would be exercising, and sitting in the place where you're to go to exercise would be an instruction manual. Because remember, this court's decision says that any mental knowledge is sufficient. It says that is the important thing. And then it says anything that conveys that knowledge is sufficient. That is not the case with equivalence law in the United States, and it is certainly not the equivalence case in China. China is very clear. If we look at Article 44, for example, the expression, substantially the same means, in order to reach this idea of what an equivalent is, generally it says generally refers to a common replacement technical feature. So taking the analogy again, you're sitting on, you're going to work out on an exercise apparatus, and there's been a finding, for example, that there is an equivalent structure because there's a description of pedals or arms. You go to the machine, and in place of those pedals or arms, you find paper or a picture that shows the relationship of those structures. This statute, when carefully examined, and even cursorily examined, demonstrates that the mental knowledge cannot constitute what the lower court called an equivalent. An equivalent must perform the function, an equivalent that when we get to the part that talks about substantial means, by substantially the same means, it's talking about a common replacement for the physical feature, the physical structure. Deep South was a 5-4 decision. Deep South was a 5-4 decision. Yes. Let's say Deep South had gone the other way. So instead of the white majority, it's now the black men majority. Would you lose in that case? Would you concede that Chinese law? No, because the gap is still recognized even through subsequent decisional authorities that have issued out of the United States Supreme Court. In fact, it was the— But you're relying on U.S. Supreme Court law here. Right. In fact, the Microsoft— Don't you have to be principled about your analogy? No, the principle is still the same because you can't make knowledge knowledge into structure. And we need to—and I need to separate these ideas, Your Honor, because we have on this side equivalence. Your point that if black men were the law, then he'd be wrong? Yeah. No, Section 271, Your Honor, doesn't implicate at all the error with respect to equivalence. Equivalence stands as a separate doctrine. What 271F did was create an ability to create infringement liability arising out of the sending of an unassembled package of parts into a foreign jurisdiction. What you have to have in order to have infringement here is either the device, which it's acknowledged we don't have the device. We don't have an exercise apparatus in China to infringe the Chinese patent. So if there's not direct infringement, is there an equivalent? This Court says that anything that conveys knowledge can be the equivalent. Chinese law says absolutely not. Chinese law says that you must have a common replacement that performs substantially the same function in order to accomplish substantially the same effect. So as we look at this case, in summary, we can say that knowledge is not equivalent to structure. And that's separate and apart from any determination of Deep South, because that is a completely separate statutory realm. We know that that structure, knowledge, cannot constitute the physical structure, the common replacement necessary under Chinese statute. But what if they sent the part with the instruction manual? All you had to do is take your box of parts that you've gotten from the Chinese company and have the missing part inserted wherever it goes according to the manual. So would that be infringing? Where is the, in your hypothetical, Your Honor, where is that assembly taking place? Oh, I don't know, Walmart, whoever sells these kind of things. Okay. So here in the United States. Yeah, yeah, yeah. Yeah. That, under Chinese law, is not infringement. You would have to actually have an assembly, an existing product in China in order, because the claim of the patent requires an actual exercise apparatus that can function for its intended purpose. Well, what if it was all put together in China, but they sent the last part, the pedal or something, with the instruction manual, and you took it to Walmart and put it together? It still wouldn't infringe because it wasn't totally put together in China? That's exactly right, Your Honor. Because under Chinese law, you have to have all of the elements of the patent claim. And they've either got to be identical or, by equivalence, found. If they're not found while it's in China, there is no infringement. I don't know how to pronounce this. The Shantou toy case? Yeah. Let me address. I see that my time has expired, and I have leave to respond, Your Honor. You can always answer a question. Thank you. With respect to that case, Your Honor, there are several points that I would like to make. First, we don't have the case. The Shantou case is, all we have is a reporter's note. Certainly not a reliable source of information upon which this Court would justifiably rely. Secondly, we know, and ICON has responded, that none of the cases had precedential value or were even on point. And we noted specifically that in all six of the cases relied on by Nautilus, all actions by all parties in the matter occurred inside the patent territory of China. Now, that's never been disputed by Nautilus. Okay. You say we can look at the excerpt from the Shantou toy case and tell that it all occurred in China? Yeah. That is the position. That's what we can glean. I would also distinguish the Shantou case on at least five or six grounds, Your Honor. The scant record at face value still doesn't speak to the issue at hand. It doesn't address the issue of what is an equivalent under Chinese law. But more importantly, the decision says nothing about equivalents. It suggests the case involved ex — no, it never suggests that export for assembly was going to happen. The case involves a design patent, not a utility patent. And we do not know what is meant by indirect infringement in the reporter's note. It's just simply not reliable. And for that reason, it had no precedential value for the lower court. It shouldn't have precedential value for this Court. We should look to the Chinese law. We have your argument, and you've saved some time for rebuttal. Thank you, Your Honor. Would you please add three minutes? It's time. Thank you, Your Honor. Excuse me. Good afternoon, Your Honors. May it please the Court. Connor Simmons on behalf of Apelli Nautilus, Inc. Let me start by — with two key points. First, ICON's counsel has misconstrued the District Court's analysis and opinion. The doctrine of equivalence analysis has no place in this analysis whatsoever. The entire discussion of doctrine of equivalence is irrelevant to the decision-making in this case. Number one. Number two, and I'll discuss that in more detail. Number two, the statement that Chinese law hasn't addressed the export or assembly of component parts and instruction manuals is flat incorrect. ICON's counsel spent a great deal of time trying to draw a parallel between Chinese law and American law. And the easy answer is they're not in parallel. They used the Deep South case as an inflection point, and the Deep South case decided by this circuit, if I recall, found that export of parts did not infringe if it went abroad. 271F, 12 years later, addressed that. In China, that was squarely and has been squarely addressed by case law. A statute wasn't required because they have addressed it with case law, and I have more than the Shantel case to discuss there. But the case law and expert opinion and testimony supports the position that these products, as sold and as packaged, infringe the Chinese patent. You're talking about York? I'm talking about York. That's exactly correct, Your Honor. In York, to be clear, the Shantel case, that was an administrative decision in the same province where the infringing activity occurred, adopted by this level court in that province, and counsel is trying to, of course, run away from that decision, but it does have precedential value. And the reason not in China is obviously different than here, Your Honors. Not all case reports are captured in the website, and administrative reports somewhat less so. But it is every bit as persuasive and or precedential as any other case. They got it from, they got it out of a judicial interpretive intellectual property law journal. The York case and that Shantel toy case is on all fours with this case. It was an unassembled product with instruction manuals, and the court there found that those products as packaged and including the instruction manuals did directly infringe the Chinese patent. Was that inside of China or outside of China? As counsel alluded to, he said gleaned. It's not clear, but it doesn't matter. They didn't find, there was no decision, the products as they existed in China infringed in the box. There was no requirement that they had to be assembled by the end user in China. Of course, that might be the assumption. You're saying the Chinese decisions that we're talking about didn't turn on where the assembly took place. That's correct. They found that the products as they existed with the components and the assembly manuals infringed, period. And it's interesting to note that their expert actually conceded this point in her deposition, which is in the record. I asked their expert if the sale of these products packaged with the instruction manuals sold within the territory of China were never assembled by the end user, would that still be a violation of Article 11? And she said yes. She said, yes, that's probably right. And I can provide you, that is at page 3802 to 3803 in the record. But importantly, the district court asked the proper question, which there's no dispute that all of the components exist in this box and that all of those components, when assembled, operate a functional machine. That's not in dispute. The only dispute is whether this has to be fully assembled to infringe. The instruction manuals are present. The district court asked the appropriate question, which was, do the user manuals disclose the structural relationships? And the court found that it did, and the court found that it infringed the Chinese patent. The doctrine of equivalence analysis is completely irrelevant. That is something that's a function of American law. They've cited from the Beijing People's Court the definition, which is no more presidential than they were talking about the lack of precedential value of the Chantal case. That's actually from the province where the infringing activity took place. But the Beijing Higher Court has no more precedential value. It doesn't matter. That definition of doctrine of equivalence has no place in this analysis. That has nothing to do with what the district court did. Now, the district court did make reference to the term equivalent a couple of times, perhaps somewhat inartfully so. But the decision-making that the district court did was to say, do the components and the instruction manuals contain all of the technical features as required? And that's what Article 7 of the Interpretation of the Supreme People's Court on Issues Concerning Patent Infringement Cases requires. And the district court found that was the case, and he relied on substantial evidence. The Chantal Toy case, which we've discussed, which is on all fours with this case. The York case is particularly instructive. It's actually not as on all fours but is more supportive. In that case, a product with an instruction manual sold, missing a key component. It was a refrigeration product, missing a key connecting pipe. And the court still found that in that case there was direct infringement because all of the technical features were included. Specifically, it said that the instruction manuals explained how this was to be put together, and it was clear from those manuals that this connecting piece that wasn't even in the box was required. And therefore, under Chinese law, they found direct infringement. These are the cases that I'm referring to that are different than American law. American law may have implemented 271F. Chinese law didn't have to. The Deep South — Is there any derivative law, derivative liability in Chinese law? I'm sorry? Is there any derivative liability in Chinese law? Because if you're saying that the manual is an equivalent, but derivative law means someone else is going to be liable for infringing if they put — use the manual and put it together. There is something called joint infringement, which is analogous to derivative infringement. But let me be really clear about something. We are not saying that the manuals are equivalent. That's what they're saying. They have taken a — I thought that's what the district court — Implied. The district court implied that. But the analysis that it was doing was simply that under the Chantal Toy Authority and under the York Authority, you don't have to have these products fully assembled. If you have the components and the manuals and they disclose all of the technical features, it infringes. There's no doctrine of equivalence analysis. The district court used the term equivalent because equivalent occurs in the statute itself. But it didn't undertake a DOE analysis to say that the manuals are actually performing the same means and same effect. That's not what the court did. I don't think the court was even thinking about that. So what ICONS Council has done has used — Was that argued before the district court? It was not, and that's my next point, Your Honor. That was never argued before the district court. And despite ICONS Council's arguments otherwise, it should have been. If they really believed that was an argument to be made, equivalent sits right there in Article 7 and 17 of the Supreme People's Court interpretations. If their argument was that these manuals couldn't be the equivalent under the way the Beijing People's Court defines them, that argument should have been made. And frankly, the reason that argument wasn't made was because this doctrine of equivalence analysis doesn't make any sense. It has no place in this analysis. The district court's analysis was very straightforward. He relied on the Toy case and the York case to say this directly infringes. It doesn't have to be assembled. We have case law that says so. Here are two, the Toy case and the York case, which didn't even include all of the component parts to your hypothetical, Your Honor. So these cases say that is direct infringement, and the doctrine of equivalence analysis, I want to be really clear, has no place in that analysis whatsoever. The district court may have used the term equivalent in its order, but it was not intending to delve into DOE or doctrine of equivalence analysis. That's something ICONS Council has grabbed onto because there were no other arguments to make. Let me also make the point that, like I said, their own expert conceded this issue during deposition. So we have the York case. We have the Toy case. We have Nautilus's expert testimony and opinion from Mia Chu, who has 17 years of patent litigation experience, and a concession from their own expert that selling these products as packaged within the territory of China would directly infringe, even if they're never assembled. It completely undercuts this entire argument. I would also offer that we've already discussed that they didn't make this argument at the district court level and should have. Therefore, I don't think this argument should be considered at all. There's also, I think, worth discussing that ICONS course of conduct in this case supports both waiver and estoppel to contest that royalties shouldn't be paid on these products. For years, ICONS was paying royalties on these products sold in territories that were not covered by the PLA at all. That included Australia, Brazil, Colombia, the Dominican Republic, Ecuador, Malaysia, and Panama. From at least 2012 to 2014, you have these products exported out of China. They're paying royalties on them. The argument never came up that those products shouldn't be paid royalties on, and because they're not covered by a patent, that means the only patent that would cover them would be the Chinese patent. The same argument applies to those sales that applies to the sales we're talking about that never came up. And the reason it never came up is because they didn't believe that that argument had merit. They didn't make this argument. They didn't drop the hammer on this argument until after the entire term of this patent license agreement had run, and they weren't going to risk any interruption to their manufacturing or sales whatsoever. Only then, when only money was at stake, did they say, and they waited until December 2015 to actually tell us, did they say, oh, wait, we don't think we owe royalties on these, despite the fact they'd been paying royalties in the exact same situation in at least seven or eight territories for years. That constitutes waiver and estoppel of making that argument. The other thing that I think, I mean, that's the classic definition of estoppel, where they've been receiving a benefit and then taken an inconsistent position to our disadvantage. Finally, I think it's worth mentioning that course of conduct is given an extraordinary amount of weight, is given great weight when determining how contracts should be interpreted. Their course of conduct in making these payments on these products sold in territories that are not covered by any patent whatsoever goes to show the way this contract was drafted and interpreted by both parties. Section 3.3, well, let me go back. These parties anticipated that ICON would pay royalties on all of these products, the ellipticals, for the term of the patent, until the last to expire of these patents, which was the Chinese patent, January 25, 2016. Section 3.3 of the patent license agreement is a provision that discusses we're going to pay a flat 5% royalty rate. We understand that different claims may be covered in different degrees in different countries, but to keep things simple, we're going to pay a flat royalty rate until the term of this patent expires, which is January 25, 2016. That's what we understood. That's what they understood. That's what the contract says. And that's what their course of conduct shows. They agreed, and our arguments, I think, were somewhat misconstrued. We have not been arguing that the contract means that these products are covered no matter what. We've been arguing that ICON agreed that these products infringe the Chinese patent in wherever they're sold. That's what Section 3.3 supports. That's what the term supports. And that's what their course of conduct, paying royalties on these products in all of these various territories that are not covered by any patent supports as well. But they just want a refund of half of last year. That's exactly right. After the patent had expired. That's exactly correct, Your Honor. Have you all done any settlement negotiations? I'm just curious. Extensive. Extensive? Yes, Your Honor. Okay. I have one more point, if you don't mind. I want to address—there is also—the court went on to, after determining that the products as packaged with the manuals disclosed all the structural relationships and contained all of the technical features, which is what was required by Article 7 of the Supreme People's Court interpretation. It also went on to address the fundamental article, which was Article 11 of the patent law. In Article 11, the court addressed the three prohibited activities that ICON had undertaken. Manufacturing, selling, and offer to sell. Clearly, the court found that the manufacturing was packaging and having these components made, put in a box with the ICON logo on them with the user manuals. That had been established by the facts. Selling, there was an issue of—the court expressly recognized that the Chinese cases supported that exporting constitutes selling under Chinese law. So, again, that goes back to how Chinese law has addressed this, quote-unquote, gap that they have suggested exists. There is no gap under Chinese law. There are two cases, Bai Jie and Sun Wu, both of which are cited in the court's opinion at 2277-78, that expressly say exporting constitutes selling. Those cases, combined with the Toy case and the York case, clearly established that under Chinese law, the case law has addressed this issue. Statutory intervention wasn't required. Components and manuals exported or sold constitute direct infringement. No doctrine of equivalence analysis is needed, and they don't need to be fully assembled. Finally, the offer for sale that these were, of course, offered for sale out of China was the third prohibited activity, and the court—it was a fairly straightforward analysis in how the court came to its conclusion that direct infringement existed under the Chinese patent. Your Honor, it absolutely does matter with respect to the York decision having occurred as wholly a transaction that transpired in China. Consider the following with me as it relates to these inapplicable authorities. York was never cited by the district court, nor was it relied on by the district court. It was not relied on by Nautilus in its brief, and there's a reason for that. It matters that all the conduct in York occurred in China. In China, the law provides that all the parts but one could support liability. If the joint tortfeasor in this case adds that missing part, then you have created the part in China. That's infringement. We've never said anything other than that. This is a straw man set up and conveniently knocked down. That's why this case doesn't appear in their briefing. It's why it wasn't relied on by the court below. It has nothing to do with the central theme of the district court's opinion. Now, Your Honor, you point out, what about the issue of derivative infringement? Well, certainly there is a derivative infringement provision under Chinese law. We need only look to the articles that we've cited, Article 119 and 121, and it shows if there is a direct infringement, then you can have, in China, then you can have a contributory or an induced infringement situation. But that occurs all in China. This case is not that. This case is an unassembled package of parts that is sent to a foreign country, the United States in this instance. That is not something that gives rise to any infringement liability under Chinese law. The court below got it wrong. An equivalent cannot be substituted with a simple mental knowledge of relationships that the patent teaches one to create. Chinese law requires more. Chinese law squarely requires that there, in order to be an equivalent, and these are words that are not used casually, as has been suggested. The district court was very clear that it was finding equivalent structure. In fact, at the record, at pages 2275 through 76, you'll find that he's very clear in enunciating a standard that is fully applicable to an equivalent analysis. In fact, the court goes so far as to suggest that we have to define what an equivalent is. He does that by suggesting that this is supplied by mental knowledge alone. That cannot be the case. Under Chinese law, it cannot be the case, especially under the circumstances here. So York is in a posit in this case. We have further that, and this is important to Your Honors. As we look at these cases, such as they are, we have the following that is clear with respect to how these issues were addressed. Kew, the expert for Nautilus, did not opine on the meaning of equivalents. Nautilus told the district court that the basis of Kew's infringement opinion is Chinese law. But then that law was ignored. The Shantou decision, which now is front and center in their presentation, I encourage you to look at the reply brief at page 38, where it states it does not matter because the district court did not consider it binding. In other words, Shantou, if we look at that court's decision, the district court's decision, they don't consider it binding. It has no bearing on this case. They relied instead, the district court relied on equivalents. And equivalents cannot produce infringement in this case. They simply got it wrong. It just seems like an unethical practice to avoid the infringement. Your Honor, not unethical if the law has not caught up with the United States in terms of filling a gap. I know, but that might be China protecting its manufacturers. Right, and Nautilus has to address that issue just as ICON has to address that issue. As products are made in China, they enter into an agreement that has a portfolio of patents that cover the world. Under those circumstances, Your Honor, they know and understand what the laws are. They go into this knowing. And that's why when we get to this idea of waiver, Your Honor, this is not a case of waiver. The district court specifically found that there was no acknowledgment of infringement. The court specifically found that the anti-waiver provisions in the contract were still binding, 8.5 and 8.6 of the patent license agreement still at work. And even if you are tempted to consider what they suggested in terms of course of conduct, this court well knows that that's parole evidence, and they also know that the patent license agreement in this case requires a writing to alter the agreement. Under all those circumstances, you cannot rely on the waiver argument. You cannot rely on the York case or the Shantou case, which, by the way, conveniently they didn't cite the York case, or have any reliance by the court on the Shantou decision. What this comes down to, and always will come down to, is what is equivalent under Chinese law. And the conduct of ICON does not fall within that. There is no infringement. On that basis, Your Honors, we seek reversal in total of the summary judgment, and we also seek remand as it relates to all of the counterclaims that should be addressed in the context of that reversal in whole. Thank you, Your Honors.